UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X
                                    :
UNITED STATES OF AMERICA            :
                                    :
            - v. -                  :    SUPERSEDING INDICTMENT
                                    :
ROBERT DEBELLO,                     :    S8 15 Cr. 491 (LTS)
        a/k/a "Old Man,"            :
        a/k/a "Bobby,"              :
        a/k/a "Grandpa,"            :
STEVEN PASTORE,                     :
RYAN ELLIS,                         :    ┌─────────────────────────┐
        a/k/a "Joseph Princi,"      :    │ USDC SDNY               │
        a/k/a "Baldy,"              :    │ DOCUMENT                │
        a/k/a "Lazy Eye,"           :    │ ELECTRONICALLY FILED    │
        a/k/a "Zeus,"               :    │ DOC #:_____   │
SALVATORE DELLIGATTI,               :    │ DATE FILED:_____   │
        a/k/a "Jay,"                :    └─────────────────────────┘
        a/k/a "Fat Sal,"            :
LUIGI ROMANO,                       :
        a/k/a "Louie Sunoco,"       :
BERTRAM DUKE,                       :
        a/k/a "Birdy,"              :
LUIGI CAMINITI,                     :
SCOTT JACOBSON,                     :
FRANK CELSO,                        :
MICK SOKOL,                         :
SPYRO ANTONAKOPOULOS,               :
MICHAEL KARNBACH,                   :
        a/k/a "Combat," and         :
JONATHAN DESIMONE,                  :
                                    :
            Defendants.             :
                                    :
- - - - - - - - - - - - - - - - - - X

## RACKETEERING VIOLATIONS

### COUNT ONE

### (Racketeering Conspiracy)

The Grand Jury charges:

1.    At all times relevant to this Indictment, ROBERT DEBELLO, a/k/a "Old Man," a/k/a "Bobby," a/k/a "Grandpa," STEVEN PASTORE, RYAN ELLIS, a/k/a "Joseph Princi," a/k/a "Baldy," a/k/a "Lazy Eye," a/k/a "Zeus," SALVATORE DELLIGATTI, a/k/a "Jay," a/k/a "Fat Sal," and LUIGI CAMINITI, the defendants, and others known and unknown, were members and associates of the Genovese Organized Crime Family of La Cosa Nostra (the "Genovese Organized Crime Family"). The Genovese Organized Crime Family was a criminal organization whose members and associates engaged in numerous acts of violence and other crimes, including conspiracy to commit murder; attempted murder; extortion; and the operation of illegal gambling businesses.

2.    The Genovese Organized Crime Family, including its leadership, membership, and associates, constituted an "enterprise" as that term is defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, although not a legal entity (the "Enterprise"). This Enterprise was engaged in, and its activities affected, interstate and foreign commerce. The Genovese Organized Crime Family was an organized criminal group based in New York City that operated in the Southern District of New York and elsewhere and constituted an ongoing organization whose

2

members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

3.    The Genovese Organized Crime Family was part of a nationwide criminal organization known by various names, including the "Mafia" and "La Cosa Nostra," which operated through entities known as "Families." The Genovese Organized Crime Family took its name from one of its early leaders, Vito Genovese.   In addition to the Genovese Organized Crime Family, five other Families operated in the New York City and New Jersey area, namely, the Gambino Organized Crime Family of La Cosa Nostra, the Luchese Organized Crime Family of La Cosa Nostra, the Colombo Organized Crime Family of La Cosa Nostra, the Bonanno Organized Crime Family of La Cosa Nostra, and the DeCavalcante Organized Crime Family of La Cosa Nostra.

4.    The Genovese Organized Crime Family operated through groups of individuals known as "crews" and "regimes," most of which were based in New York City. Each "crew" had as its leader a person known as a "Caporegime," "Capo," "Captain," or "Skipper," and consisted of "made" members, sometimes known as "Soldiers," "wiseguys," "friends of ours," and "good fellows." Soldiers were aided in their criminal endeavors by other trusted individuals, known as "associates," who sometimes were referred to as "connected," "on record," or identified as "with" a Soldier. Associates participated in the various activities of the crew and its members.   In order for an associate to become a made member of the Family, the associate

3

must first be of Italian descent and typically needed to demonstrate the ability to generate income for the Family and/or the willingness to commit acts of violence. Each Capo was responsible for supervising the criminal activities of his crew and provided Soldiers and associates with support and protection.   In return, the Capo typically received a share of the illegal earnings of each of his crew's Soldiers and associates, which was sometimes referred to as a "tribute."

5.    Above the Capos were the highest-ranking members of the Genovese Organized Crime Family, commonly referred to as the "Administration."   The head of the Genovese Organized Crime Family was known as the "Boss," who was ordinarily assisted by an "Underboss" and a "Consigliere," or counselor.    The Boss, Underboss, and Consigliere were responsible for, among other things, setting policy, resolving disputes between and among members of the Genovese Organized Crime Family, and resolving disputes between members of the Genovese Organized Crime Family and members of other criminal organizations.   The Administration of the Genovese Organized Crime Family was also responsible for overseeing the criminal activities of the Family's Capos, Soldiers, and associates, and was at times called upon to make decisions regarding those criminal endeavors.

6.    The Boss, Underboss, and Consigliere supervised, supported, protected, and disciplined the Capos, Soldiers, and associates, and regularly received reports regarding their various

4

activities.    In return for their supervision and protection, the Boss, Underboss, and Consigliere typically received part of the illegal earnings of each crew.

7.    The Genovese Organized Crime Family has taken significant steps to protect and insulate its Administration members from detection and scrutiny by law enforcement.  These steps include appointing multi-member committees, and/or "panels," to perform the function of Administration positions, including the Boss, and to oversee the daily affairs of the Genovese Organized Crime Family; and naming temporary, or "Acting" Bosses and other Administration positions.

8.    While the overall structure of the Genovese Organized Crime Family remained constant, the structure of the Family's Administration    was    sometimes    adjusted    to    meet    situations — including particularly the incarceration of the Boss, Acting Boss, and other high-ranking members of the Family — that threatened to impede the orderly operation and criminal activities of the Genovese Organized Crime Family.

## THE RACKETEERING DEFENDANTS

9.    At all times relevant to this Indictment, ROBERT DEBELLO, a/k/a "Old Man," a/k/a "Bobby," a/k/a "Grandpa," STEVEN PASTORE, RYAN ELLIS, a/k/a "Joseph Princi," a/k/a "Baldy," a/k/a "Lazy Eye," a/k/a "Zeus," SALVATORE DELLIGATTI, a/k/a "Jay," a/k/a "Fat Sal," and LUIGI CAMINITI, the defendants, were members and

associates of the Enterprise, the Genovese Organized Crime Family. DEBELLO, PASTORE, ELLIS, DELLIGATTI, and CAMINITI participated in the operation and management of the enterprise as follows:

a. DEBELLO was, at times relevant to this Indictment, a Soldier of the Genovese Organized Crime Family. DEBELLO reported directly to a Captain ("Captain-1") in the Genovese Organized Crime Family, often at a social club in lower Manhattan. In or about 2001, DEBELLO was arrested on federal criminal racketeering charges filed in the United States District Court for the Eastern District of New York arising out of his involvement with the Genovese Organized Crime Family, and, in or about 2002, pleaded guilty to conspiracy to commit assault in aid of racketeering in that case. As relevant to this Indictment, in his capacity as a Soldier in the Genovese Organized Crime Family, DEBELLO was involved in a murder conspiracy, an attempted murder, an extortion conspiracy, an illegal gambling operation, and the collection of unlawful debt.

b. PASTORE was, at times relevant to this Indictment, a Soldier of the Genovese Organized Crime Family. In or about 2005, PASTORE was arrested on federal criminal racketeering charges filed in the United States District Court for the District of New Jersey arising out of his involvement with the Genovese Organized Crime Family, and, in or about 2005, pleaded guilty to participating in an illegal gambling business run by the

6

Genovese Organized Crime Family. As relevant to this Indictment, in his capacity as a Soldier of the Genovese Organized Crime Family, among other things, PASTORE was involved in an illegal gambling operation.

c. ELLIS was, at times relevant to this Indictment, an associate of the Genovese Organized Crime Family who was "on record" with Genovese Organized Crime Family Soldier DEBELLO. In or about 2012, ELLIS was arrested on federal criminal charges filed in the United States District Court for the Eastern District of New York of, among other charges, racketeering conspiracy, extortion conspiracy, and illegal gambling arising from his involvement in the Genovese Organized Crime Family, and, in or about 2013, pleaded guilty to conspiracy to commit extortion. As relevant to this Indictment, in his capacity as an associate in the Genovese Organized Crime Family, ELLIS was involved in a murder conspiracy, an attempted murder, an extortion conspiracy, an assault conspiracy, an illegal gambling operation, and the collection of unlawful debt.

d. DELLIGATTI was, at times relevant to this Indictment, an associate of the Genovese Organized Crime Family who was "on record" with Genovese Organized Crime Family Soldier DEBELLO. As relevant to this Indictment, DELLIGATTI, among other things, was involved in a murder conspiracy, an attempted murder, an extortion conspiracy, and an illegal gambling operation.

e. CAMINITI was, at times relevant to this Indictment, associated with the Genovese Organized Crime Family and several of its members and associates, including DEBELLO, PASTORE, ELLIS and DELLIGATTI. As relevant to this Indictment, CAMINITI, among other things, was involved in an assault conspiracy and an illegal gambling operation.

## PURPOSES OF THE ENTERPRISE

10. The purposes of the Enterprise included the following:

a. Enriching the members and associates of the Enterprise through, among other things, (i) the extortionate control of businesses, persons, and property through threats of physical and economic harm; (ii) the operation of illegal gambling businesses; and (iii) the collection of unlawful debt.

b. Preserving and protecting the power, territory, and financial profits of the Enterprise through intimidation, violence, and threats of physical and economic harm;

c. Promoting and enhancing the Enterprise and the activities of its members and associates; and

d. Keeping victims and citizens in fear of the Enterprise and associates by: (i) identifying the Enterprise, its members, and its associates with La Cosa Nostra or the "Mafia"; (ii) causing and threatening to cause economic harm; and (iii) committing and threatening to commit physical violence.

8

## **MEANS AND METHODS OF THE ENTERPRISE**

11.     Among the means and methods employed by the members and associates in conducting and participating in the conduct of the affairs of the Enterprise were the following:

a.     To protect and expand the Enterprise's business and criminal operations, members and associates of the Enterprise conspired to commit murder, and they threatened, assaulted, and intimidated persons who engage in activity that jeopardized (i) the power and criminal activities of the Enterprise; (ii) the power of leaders of the Enterprise; and (iii) the flow of criminal proceeds to the leaders of the Enterprise.

b.     Members and associates of the Enterprise promoted a climate of fear in their community through threats of economic harm and violence.

c.     Members and associates of the Enterprise generated income for the Enterprise through, among other things (i) extortion; (ii) the operation of illegal gambling businesses; and (iii) the collection of unlawful debt.

d.     Members and associates of the Enterprise at times engaged in criminal conduct or coordinated their criminal activities with leaders, members, and associates of other La Cosa Nostra Families. At other times, members and associates of the Enterprise met with leaders, members, and associates of other La Cosa Nostra Families to resolve disputes over their criminal

9

activities.

                e.    Members and associates of the Enterprise used various techniques to avoid law enforcement scrutiny of the Enterprise's criminal activities. Members and associates of the Enterprise typically used coded language to make arrangements for meetings and to refer to other members and associates of the Enterprise, and took other steps to frustrate law enforcement's attempts to overhear their discussions. Members and associates of the Enterprise also engaged in other evasive conduct, such as whispering and speaking in hushed tones, in an effort to obstruct potential law enforcement eavesdropping, and not specifying the names of those about whom they were speaking. Members and associates of the Enterprise also attempted to obstruct potential law enforcement eavesdropping by engaging in "walk and talks" and by stating — including on conversations intercepted pursuant to judicially authorized wiretaps — that certain conversations should be conducted in person, and not by telephone.

                f.    Members and associates of the Enterprise attempted to identify and did identify individuals suspected of providing, or deemed likely to provide, information to law enforcement about the Enterprise, its members and activities, and about other La Cosa Nostra Families.

### THE RACKETEERING CONSPIRACY

        12.    From at least in or about 2008, up to and including

10